We have four cases on the calendar this morning, one from the Court of International Trade, two from the Patent Office, and one from the Court of Federal Claims that is being submitted on the briefs and will not be argued. After we hear the first case, the panel will adjourn for five to ten minutes and then return with an equally distinguished panel. Our first case is Capella Sales & Services v. United States, 2016-2647, 2017-1196. Ms. Chin. Yes, good morning, Your Honors. May it please the Court. The trade court wrongly dismissed Capella's complaints on Rule 12b-6 grounds. This case presents exceptionally unique circumstances not anticipated by Congress at the time that it promulgated the statute. Isn't the solution of that going back to Congress? I mean, we have to read the statute that Congress enacts. Well, what Congress enacted at the time in 1979 does not address the precise question and circumstances at issue today in 2017. And that's precisely why Capella's raised the issue of an ambiguity in the statute. But the issue for the Court today is whether Capella's raised a plausible legal theory to survive a Rule 12b-6 motion to dismiss. The task of this Court is not to evaluate the strengths of our arguments versus Congress's arguments. As long as Capella has raised that plausible legal theory that there is an ambiguity in the statute, then the Court must remand this case back to the trade court. Well, it's not enough to just allege that there's an ambiguity in the statute, right? We have to agree that there's an ambiguity in the statute that needs to be resolved. That's correct, Your Honor, and there is an ambiguity in the statute, specifically 19 U.S.C. 1516 A and C. I will explain why. The term entries in those provisions is ambiguous. The statute does not define whether all or a subset of all entries prior to the issuance of the Timken Notice must be liquidated according to the original determination. Now, because of this ambiguity, commerce must, under Chevron, interpret the statute reasonably and make exceptions in extreme cases such as here. In Section 1516 A.C. 1... I don't really understand your comment that Congress didn't say whether it's all entries or not. I mean, Congress separated the classifications of entries. How could it be anything less than all? Well, Your Honor, the reason it's anything less than all is because in the legislative history that Congress made clear that in the Senate report I'm referring to specifically, for all entries in Section 1516 A.E. 1, it refers to all entries after the publication of the Timken Notice shall be liquidated in accordance with the Court's decision. However, prior to the publication of the Timken Notice, the word entries in Section 1516 A.C. 1 is not defined as all entries. The Senate report refers to all entries only for those entries after the Timken Notice. So Congress clearly knew how to use the word all, and they also discussed the usual case versus extraordinary circumstances. So in the usual case, there may be entries that are enjoined prior to the publication of the Timken Notice, and that's one subset of entries that are carved out of the entries listed in 1516 A.C. 1. But there may be other subsets. You'd like this to be read as if it said whatever, whichever entries were entered, and only such  as that. That's really reading language into the statute? Yes, Your Honor. In C. 1, if it says all entries or only entries of merchandise of the character, etc., that would make it very clear that that covers the waterfront of entries. Well, I guess you want us to add the word typically, like entries of merchandise covered by the determination typically shall be liquidated in accordance with the determination. And the word typically isn't in the statute. You want us to read the word typically from that usage of that adverb in the legislative history, but the legislative history doesn't give us any suggestion of why we should deviate from what I think looks like the plain language of the statute. Well, Your Honor, I would disagree with that. The legislative history actually refers to that typical case, meaning in the usual case. Are we supposed to take legislative history and then assume that we should use that to put words into the statute that aren't there? Well, the court may rely on the legislative history for guidance in reviewing the statutory language. So it's not just enough to review the statutory language in a vacuum. The court has to review it in the context and the purpose of the law. But isn't the atypical circumstance or the extraordinary circumstance the kind that fall under the category of those entries that could be enjoined? That is one circumstance. But you never asked for the entries to be enjoined, correct? Compella did not ask for the entries to be enjoined. However, the ambiguity... And nothing came in after the Timken notice, right? I'm sorry, Your Honor. Assuming we have three categories of entries, one that comes in with no request for injunction that comes in before the Timken notice, the next is those that are enjoined, and then the third is those that come in after the Timken notice. So you don't dispute that you're only in that first category, correct? We don't dispute that Compella is in the category of entries that were entered prior to the Timken notice being published and not enjoined. However, this statutory structure is ambiguous in that Congress did not address these circumstances at the time it promulgated the statute in 1979. As we explained in our brief, in 1979, the highest CBD rates were about 40%. There was a high rate here. Your client did not join the McLean-Fogg litigation, did it? No, it did not. So the fault seems to be more with your client's inactivity rather than with Congress. Your Honor, the fact that Compella did not join the McLean-Fogg litigation or any administrative review, that's not required under the statute. This actually should have led Commerce to interpret the statute differently in these circumstances. The concern we have, or I have, is that there was an opportunity for judicial review or administrative review, and so there were remedies available to Compella. It didn't exercise them. And so it starts to look a lot like a classic waiver issue, where the party waived its opportunities to resolve the issue or contest the issue. And so if I read the plain language in this very plain way that it says there's different categories of when these entries are made, and then if you don't have your entries or you don't come in or those entries aren't made after the Timken notice, you're kind of stuck with whatever the determination order was. Well, Your Honor, the court doesn't have to agree with Compella's arguments about the statute or why there's ambiguity. It only has to find there's a plausible legal theory that Compella has alleged. The court dismissed this case preliminarily, before it even got to the merits. And we could spend a lot of time discussing all of the merits of Compella's case, but that's really for the trade court to address. As long as Compella's made that plausible legal argument, that clears the hurdle of a 12b6 motion, and it should be heard on the merits at the court. And as far as whether there was suspension of liquidation or participation in the court case, this is not the usual circumstance. Can you say it's not the usual circumstance? I mean, Congress did contemplate the three circumstances at issue, one of which is you're just stuck with whatever Commerce decided, unless and until this court or the CIT says that what they decided was wrong. Yes, this is what Congress contemplated in 1979, but that was when rates, the CBD, all the courts allowed to rewrite the statute. No, Your Honor, the court would not rewrite the statute. However, if Congress hasn't spoken to this set of circumstances, which is what Compella has alleged its complaint, then there is that ambiguity in the statute and the case should be decided on the merits. As we explained in our brief, from 1979 until now, Commerce's, all others' rates for countervailing duty cases have risen from 42 percent, a high of 42 percent, all the way to as high as 600 percent. So if the court says there's no ambiguity at all, the language is plain, then Commerce can find an all others' rate of 10,000 percent, 20,000 percent. And we're talking about a CBD all others' rate that applies to all exporters and producers that do not participate in the, that are not selected as mandatory respondents in an investigation. This is not behavior by a respondent where they fail to cooperate, fail to answer questionnaires. Many of them, they don't even know that such an investigation has gone on. But that was true at the time that Congress passed the statute. That's right, but that was rates at 40 percent. So, essentially, if the court... How do we know that back then, 40 percent wasn't as arguably punitive as 300 percent right now? Well, Your Honor, that's for the trade court to decide. I mean, it's our position that 366 percent is punitive and is unjust enrichment at compel's expense. But as far as the merits of what the line is between... Well, isn't that the argument that was made in the McLean Fog Case? I mean, why didn't you participate then? Well, the McLean Fog Case related to a 17-year methodology of calculating an all others rate that was repudiated by this court. But that wasn't, that's not directly what's at issue here. The issue here is Capella's arguing whether, what the effective date, whether, how far back it should be applied retroactively. Because when Commerce issued the remands and reset the rate to 7 percent from 374 percent, they set the rate back 10 days. They said all entries that enter after this date, which is 10 days prior to their publication date, those entries will be subject to the new rate. Capella's argument is that rate should be retroactively applied back to the preliminary determination in the original investigation. That is Capella's argument. Ms. Chen, you're into your rebuttal time. You can continue to use it or save it. Well, Your Honor, I'd just like to just sum up. This case is not about a decision on the merits of Capella's case. Capella's pled a plausible legal theory. The statute's carved out one subset of entries, those enjoined entries, but there may be others pursuant to the legislative history. The Senate report generally refers to subsets with reference to one specific subset only and only refers to all entries for entries after the Timken Notice. Commerce's interpretation flies in the face of accuracy, remedial objectives, and fairness, which is what the purpose of the statute is. The rate history of the CVD ad valorem rates also supports Capella's claim  and, in essence, Congress has not directly spoken to this set of circumstances, which counts as extraordinary circumstances set forth in the legislative history. Thank you. We will save the remainder of your time for rebuttal. Ms. Lee. Good morning, Your Honors. May it please the Court. As Capella's not entitled to a lower CVD rate, which is established in the McLean-Fogg litigation, because of two things. Capella did not participate in the McLean-Fogg action challenging the final investigation rate and Capella did not have its entries enjoined pursuant to that action. Instead, Capella's entries were made before the rate was revised by that litigation and Capella should have participated in the two administrative reviews that covered its four entries. You concede that they were not deemed an uncooperative party, correct? Correct, but that's irrelevant to this particular question, Your Honor, because what they're saying is that the rate should not apply to them, but the rate itself was calculated by Commerce in the normal course and, you know, according to standard procedures and so that's fine, but the rate will apply. The whole point is that if the rate was punitive, which ultimately it was deemed to be way too high by a lot, so you go from 374 to 7, that why should a party who was not uncooperative not get the benefit of that? Well, Your Honor, I see that it's only hindsight, it's a 20-20 type of thing, but that rate was legal and reasonable at the time that Capella made its entries and Capella could have engaged... But when you say it was reasonable at the time, I mean, ultimately the court said, no, it wasn't reasonable. Well, but except for, Your Honor, if we get to the statute, the entries are supposed to receive, if there is no request for review under the administrative review process, that automatic liquidation instructions are issued and they are liquidated in accordance with the cash deposit rate, which is the 300 and something... I understand what your argument is as to how the statute works, but in terms of what the reality is, we're talking about a punitive rate that ends up getting applied to somebody who was not uncooperative. Well, Your Honor, it's also somebody who didn't participate at all. So that's one point. Because others did not participate in the investigation, did not participate with the McLean Fog action, and the all others rate applies to many importers who did not participate. That's the way the system works. Isn't your best point that the statute doesn't talk about reasonable or unreasonable and it doesn't say unless it's subsequently reversed? Your Honor, you're right. Our best point is that the statute is clear. It's absolutely clear. There's no ambiguity. You're correct. And you're right to also note that the word unless in the statute, in 1516Ac, it says unless your entries are enjoined. That carves out an exception right there. And we know that their entries are not enjoined. And in fact, if we look further in the context of 1516A and we go to subsection E, we also see there's a carve out there. It says, oh, you can apply that rate to entries after the Timpian Notice unless those entries are enjoined. So we have a consistent and complementary carve out there. And the legislative history that Capella cites, the Senate report, says the same thing. Because I believe it was you, Judge O'Malley, who noticed that the extraordinary circumstance is embedded there and it is called out as enjoined entries. And we see that in 1516Ac, too. But do you agree that Commerce has discretion to make its new rate retroactive? It does not have discretion to make its rate retroactive to the point where Capella is saying. All the way back to the start of the order, no, Your Honor, because in fact, if you look at the way the system is, the administrative review system, by the time Capella comes to court, we've already had two administrative reviews and now there are many. That sort of system cannot exist if you're constantly altering the rate. What's your authority for the proposition that the discretion doesn't exist? What's your authority for the proposition that Commerce doesn't have that discretion? We have it in the statute itself, 1516Ac and E, because it only says enjoined entries. And it tells you anything that happens before the Timken Notice is subject to the determination of Commerce that are not enjoined. But Commerce made this retroactive to 10 days before the Timken Notice. Except for if you look at the statute, again, looking at the same two provisions, Commerce is supposed to give notice within 10 days of the court's decision. It made it retroactive to make sure that it's 10 days right after the court's opinion in both cases, in the McLean-Fogg cases. That's what the retroactivity is. It's merely to comport with the statute. It isn't because they decided that this is an appropriate day, just picking it out of the hat, that's not it. In fact, they comport with the statute. And that's what we have to follow. We have to follow the plain language of the statute. And even if there was some ambiguity, Commerce is absolutely reasonable in the way that it interpreted it. If you have a decision that occurs years later after entries come in, it should not be applied retroactively unless we have enjoined entries. It needs to be applied prospectively, which is exactly the way the administration of things can then run. It preserves the administrative review process that's in place. Ms. Chen says that the statute doesn't say all. Were any of the entries here not pre-Timken notice? They were all pre-Timken notice and not enjoined. So that argument is false. The argument that the statute doesn't say all, thereby implying that there were some that were post-Timken notice. The statute AC applies to what we were saying. Before the Timken notice, unless they're enjoined. And then E tells us what happens unless they're enjoined and then after the Timken notice. So they're complementary and they're consistent. And within the context of that statute,  The other side, Capella, refers to the legislative history where there's a brief suggestion that maybe circumstances like Capella's what's supposed to happen is typically or usually they get the pre-Timken notice rate but maybe not always. Maybe not for all entries. Can you respond to that note in the legislative history? The legislative history where it says the usual case What do you think they meant by the usual case? I believe that what they're talking about is in fact the normal course, which is their administrative review process. Which is something that Capella could have engaged in as your Honor pointed out. This is a system that requires participation. Capella did not do that. In fact, it did not do that from the very start. When it entered its merchandise, it did not declare them properly as subject to AD or CBD. It did not do that. It claims that its broker somehow made a mistake or that customs finally told them what the proper classification and what the proper duty rate should be. But even that is no excuse. It's like you're a responsible importer. You still need to know what your merchandise is and what laws apply to it. Did they receive notice of the first and second reviews? There are federal register notices. In terms of actual notice, they received actual notice from customs prior to the second administrative review but they still did not participate. What Capella is arguing is an exception only for itself. It's a windfall. Hasn't Congress said repeatedly and haven't we said repeatedly that one of the overall congressional goals here is to make sure that commerce doesn't act in a punitive fashion with respect to the setting of these rates because that would be inconsistent with all of our treaty obligations? Respectfully, it was not punitive. At the time that these entries were made... We know court had ruled it to be punitive at the time that the entries were made. It was lawful at the time that the entries were made and if we were to give credence to this type of argument then you do have a problem where everybody else who participated in the administrative review or even the McLean Fog plaintiffs they should not receive the benefit as well. Again, this system has been going on. Is there anyone else in Capella's shoes who was not deemed to be uncooperative but who didn't participate in the McLean Fog or didn't have the entry enjoined? Your Honor, not that I know of and they weren't deemed to be uncooperative so there was no finding of that. What Capella came to court with was basically an allegation that commerce was unreasonable, arbitrary, capricious, or otherwise not in accordance with law in setting the date of the revised rate prospectively except for enjoined entries and they want it to be set way back. So your answer is no one else falls into this? Not that I know of, Your Honor. They certainly have not said anything or they have participated the way they're supposed to and they understand what the rules are and they have not challenged anything in court. So that could be a possibility as well, Your Honor. Standing here I don't exactly know every single possibility but Capella is the only case that we know of that has challenged the statute like this. And in terms of the 12B6 motion in effect and your Honor, Judge O'Malley was correct that you have to have more than a mere possibility when you allege. These are all conclusory allegations. We have to remember here that there are no facts in dispute. Everybody knows that there was no participation everybody knows what the rate is everybody knows what happened with the litigation with the McLean Fog. So there are no facts in dispute. So the trial court judge was correct in dismissing the case for failure to state a claim and was correct for entering judgment. So I just wanted to point that out as well since that was something that was touched upon. This is not a question also of unjust enrichment. This has nothing to do with it again. This is only it was the proper rate at the time of Capella's entries and that they failed to do anything to either try and get a different rate or try and participate. It's like that cannot be something that is redressable here  So Commerce acted properly and reasonably in assessing Capella's entry the countervailing duties at the cash deposit rate at the time of entry and if your honors have any other questions I'd be happy to answer them. Thank you, Ms. Lee. Ms. Chen has a couple of minutes of rebuttal time. Yes, your honor. The only issue before this court again is whether Capella's alleged a plausible legal theory to survive a Rule 12b motion to dismiss. In the statute there is not a consistent carve out as the government alleges. In C1 the reference is to entries but the legislative history for 1516AE refers to all entries after the Timken notice and the statute uses all in other provisions, for example in C2 the statute says some or all entries so there is no reason why Congress could not have used all or only in section C1 that is an ambiguity and also as far as Commerce's discretion to retroactively apply the lawful rate in fact Commerce actually deviated from the statute. The statute says all entries after the publication of the Timken notice should be subject to the new rate but Commerce in its discretion applied the rate to entries that entered 10 days prior so Commerce deviated from the statute so that is not plain in and of itself. As far as what the lawful rate at the time was 374% was not lawful at the time and that is the whole purpose of the statutory construct is to enact some kind of protection to allow parties or even non-parties as Cabela is arguing here to not be subject to such a high rate in this case these are unique circumstances because this is a CVD investigation it involves a rate that has been judicially invalidated the two year period to raise a claim is almost up under 1581I we understand that expires November this month so there will not be a floodgates issue as Commerce has argued and for these reasons you may have noticed your red light is on so we have your argument and we will take case under advisement and the court will adjourn briefly Thank you